IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL MEDICAL IMAGING, LLC, *et al.*, <br>     Plaintiffs, <br> v. <br><br> U.S. BANK, N.A., *et al.*, <br>     Defendants. | CIVIL ACTION NO. <br> 16-5044 |

# MEMORANDUM OPINION

**RUFE, J.**                                                                                                                                                   July 12, 2017

      As compared to the thorny history underlying this case, the issue before the Court is simple: have Plaintiffs adequately alleged that Defendant Ashland, LLC filed involuntary bankruptcy petitions against them in bad faith pursuant to 11 U.S.C. § 303(i)(2)?[1] Plaintiffs National Medical Imaging, LLC and National Medical Imaging Holding Company, LLC (together, "NMI") seek to hold ten defendants jointly and severally liable.[2] For the reasons discussed below, the Court will deny Defendant Ashland Funding, LLC's motion to dismiss Plaintiffs' Amended Complaint.[3]

---

[1] 11 U.S.C. § 303(i)(2) provides that when a bankruptcy court dismisses an involuntary bankruptcy petition the court may grant judgment "against any petitioner that filed the petition in bad faith, for—(A) any damages proximately caused by such filing; or (B) punitive damages."

[2] Defendants U.S. Bank, Lyon Financial Services, Jane Fox (Director of Operations for Lyon), DVI Funding, DVI Receivables XIV, DVI Receivables XVI, DVI Receivables XVII, DVI Receivables XVIII, and DVI Receivables XIX filed an answer to the complaint, and Defendant Ashland Funding, LLC filed a motion to dismiss.

[3] The Court previously granted NMI's Motion to Withdraw the References from the Bankruptcy Court as to their § 303(i)(2) damages claims, and this action followed. Plaintiffs have filed a parallel action in Bankruptcy Court for the Eastern District of Pennsylvania, seeking attorneys' fees and costs under § 303(i)(1).

I.     **FACTUAL AND PROCEDURAL HISTORY**[4]

The parties in this bankruptcy case are familiar foes, having spent over a decade litigating the aftermath of a complex securitization transaction. In 2000, Plaintiffs were affiliated with certain limited partnerships (the "NMI LPs") that operated diagnostic imaging centers. The NMI LPs entered into master leases and equipment schedules (the "Master Leases") with DVI Financial Services, Inc. ("DVI Financial") to finance the purchase of medical diagnostic equipment. The leases were secured by a limited guaranty executed by Maury Rosenberg, the managing member of NMI, and an additional guaranty by NMI.

DVI Financial then transferred some of the Master Leases to DVI Funding, LLC, which held them directly, and the remainder were securitized and assigned to the DVI Receivables corporations. At the same time, DVI Funding entered into indentures with U.S. Bank, acting as trustee of the transaction, under which notes were issued to investors with the Master Leases serving as collateral. DVI Financial was appointed as servicer for the trustee, U.S. Bank, but after filing for bankruptcy in 2003, DVI Financial transferred its rights as servicer to Lyon Financial Services, a subsidiary of U.S. Bank.

A.     **The First Round of Litigation and the Settlement Agreement**

In December 2003, U.S. Bank Portfolio Services, a Lyon subsidiary, filed lawsuits against the NMI LPs, NMI, and Rosenberg in Pennsylvania state court, alleging that the NMI LPs had defaulted on their Master Lease obligations. Several of the DVI entities then filed involuntary Chapter 11 bankruptcy petitions against NMI. On August 12, 2005, Rosenberg, NMI, the NMI LPs, and Lyon entered into a comprehensive Settlement Agreement to resolve these disputes. Pursuant to the Settlement Agreement, the involuntary bankruptcy petitions were

---

[4] The following background is drawn from the Court's September 1, 2016 Opinion granting Plaintiffs' Motion to Withdraw the References from the Bankruptcy Court as to their § 303(i)(2) damages claims.

dismissed, and Lyon agreed to restructure the repayment obligations of the NMI LPs under the Master Leases and to release NMI from all claims except those arising under the Settlement Agreement. In return, Rosenberg and NMI executed new guaranties of repayment and confessions of judgment in favor of Lyon. On March 2, 2007, DVI Funding sold all of its interests in the Master Leases to Defendant Ashland Funding, LLC ("Ashland").

### B. Round Two: Judgment is Confessed, the Involuntary Petitions are Filed, and the Rosenberg Bankruptcy is Adjudicated in Florida

In March 2008, Lyon notified NMI and Rosenberg that the NMI LPs had defaulted on their repayment obligations under the Settlement Agreement, and in July 2008, Lyon filed a confession of judgment against Rosenberg and NMI in Pennsylvania state court. In November 2008, DVI Funding, despite having no remaining interest in the Master Leases, together with five other DVI entities, filed involuntary bankruptcy petitions against NMI and Rosenberg in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Rosenberg moved to dismiss the involuntary petitions against him and to transfer venue to the United States Bankruptcy Court for the Southern District of Florida, where he resides. The Rosenberg bankruptcy proceedings were transferred to that district.

Following the transfer of venue, and while Rosenberg's motion to dismiss the involuntary petition was still pending, the petitioners filed a second amended petition which substituted Ashland in place of DVI Funding. Rosenberg moved to strike the second amended petition as improperly filed without leave of court. After a hearing on Rosenberg's motion to dismiss the amended involuntary petition, the Florida Bankruptcy Court issued a memorandum opinion and order dismissing the amended involuntary bankruptcy petition against Rosenberg ("*Rosenberg I*").[5] In light of this decision, the court dismissed as moot the motion to strike the second

---

[5] *In re Rosenberg*, 414 B.R. 826 (Bankr. S.D. Fla. 2009).

3

amended petition.[6] The Florida Bankruptcy Court reached five alternative holdings: (1) there was no guaranty in favor of the DVI entities or Ashland, and therefore they were not creditors of Rosenberg; (2) the DVI entities and Ashland were not the real parties in interest; (3) the DVI entities were judicially estopped from filing the involuntary bankruptcy petitions because Lyon had claimed that the Rosenberg guaranty was owed to it when filing the confession of judgment in the Bucks County court; (4) Lyon was Rosenberg's only creditor because the Settlement Agreement constituted a novation; and (5) the DVI entities and Ashland held contingent claims subject to a *bona fide* dispute.[7]

On September 27, 2011, the United States District Court for the Southern District of Florida issued a memorandum opinion and order substantially affirming the Florida Bankruptcy Court's decision ("*Rosenberg II*"),[8] and, on July 6, 2012, the Eleventh Circuit issued a *per curiam* opinion affirming *Rosenberg II* in full ("*Rosenberg III*").[9]

### C.  The Eastern District Bankruptcy Court Gives Collateral Estoppel Effect to *Rosenberg I*

In the Pennsylvania bankruptcy proceedings, Ashland was added as a petitioner in the Second Amended Petition as successor to DVI Funding, and later joined the other petitioners in filing a Third Amended Petition. After *Rosenberg I*, the Bankruptcy Court for the Eastern District of Pennsylvania dismissed the involuntary bankruptcy petitions against NMI on the basis of the collateral estoppel effect of *Rosenberg I*'s holdings that (1) the DVI entities and Ashland were not real parties in interest and (2) Lyon was the only creditor because the Settlement

---

[6] *Id.* at 832 n.3.

[7] *Id.* at 840-44.

[8] Order Affirming in Part and Reversing in Part Bankruptcy Court's Orders, *DVI Receivables XIV, LLC, et al. v. Rosenberg*, No. 10-24347, Doc. No. 11 (S.D. Fla. Sept. 27, 2011).

[9] *In re Rosenberg*, 472 F. App'x 890 (11th Cir. 2012).

4

Agreement constituted a novation.[10] The DVI entities and Ashland appealed, and this Court affirmed the Pennsylvania Bankruptcy Court's order.[11] The Third Circuit affirmed after Ashland appealed this Court's order.[12]

### D. Rosenberg's § 303(i) Adversary Proceeding

While the appeals to the Southern District of Florida and Eleventh Circuit were pending, Rosenberg brought a § 303(i) sanctions claim in an adversary proceeding in the Florida Bankruptcy Court.[13] Ashland moved to dismiss, and the Florida Bankruptcy Court granted its motion, finding that because Ashland was not a petitioning creditor in the operative underlying petition, a § 303(i) sanctions claim against it could not stand.[14] After the reference was withdrawn from the Bankruptcy Court, the Florida District Court held a jury trial on Rosenberg's § 303(i)(2) claims for damages. The jury returned a verdict in favor of Rosenberg and against the DVI entities and U.S. Bank, and that verdict was upheld by the Eleventh Circuit.[15]

### E. NMI's § 303(i) Adversary Proceedings

On May 27, 2014, Plaintiffs brought claims for attorneys' fees and costs under § 303(i)(1) and Bankruptcy Rule 9011 in two adversary proceedings in the Pennsylvania Bankruptcy Court. Plaintiffs also filed a complaint in this Court against Defendants seeking damages under § 303(i)(2). On March 30, 2014, this Court granted Defendants' Motion to Dismiss Plaintiffs' Complaint, holding that § 303(i)(2) does not create an independent cause of

---

[10] *In re Nat'l Med. Imaging, LLC,* 439 B.R. 837, 847-52 (Bankr. E.D. Pa. 2015).

[11] *DVI Receivables XIV, LLC v. Nat'l Med. Imaging, LLC*, 529 B.R. 607, 627 (E.D. Pa. 2015).

[12] *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, No. 15-1996, 2016 WL 1743475, at *1 (3d Cir. May 3, 2016).

[13] *Rosenberg v. DVI Receivables, XIV, LLC*, Adv. No. 10-3812 (Bankr. S.D. Fla.).

[14] Memorandum Opinion Granting Ashland's Motion to Dismiss, *Rosenberg v. DVI Receivables, XIV, LLC*, Adv. No. 10-3812, Doc. No. 168 (Bankr. S.D. Fla. Mar. 23, 2012).

[15] *Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283, 1286 (11th Cir. 2016).

action that may be brought directly in the district court. Plaintiffs then filed Amended Complaints in the adversary proceedings, adding claims for damages under § 303(i)(2), and moved to withdraw the references from the Pennsylvania Bankruptcy Court as to the § 303(i)(2) claims. The Court granted Plaintiffs' motion on September 1, 2016.

NMI filed the instant amended complaint on September 21, 2016, in accordance with the Order of this Court granting NMI's request to withdraw the reference from the Bankruptcy Court. The amended complaint seeks compensatory and punitive damages under 11 U.S.C. §303(i)(2) arising from the involuntary bankruptcy suit brought by Defendants.[16] U.S. Bank, Lyon Financial Services, and the DVI entities filed an answer to the amended complaint, and Ashland moved to dismiss.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[17] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[18] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[19] Something more than a mere possibility of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[20]

---

[16] NMI is also seeking attorneys' fees and costs against Defendants under 11 U.S.C. § 303(i)(1) in the Bankruptcy Court for the Eastern District of Pennsylvania.

[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[18] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[19] *Twombly*, 550 U.S. at 555, 564.

[20] *Id.* at 570.

## III. DISCUSSION

Ashland argues that its dismissal from this case is warranted for the following five reasons: (1) its dismissal from the Florida bankruptcy action compels its dismissal here; (2) NMI has not alleged that Ashland was a "petitioner" under § 303(i)(2); (3) NMI has not sufficiently pleaded that Ashland acted in bad faith; (4) NMI has failed to plead that its damages were proximately caused by Ashland filing the petition in bad faith; and (5) § 303(i)(2) does not provide for joint and several liability.[21]

### A. Whether the Florida Bankruptcy Holdings Have Preclusive Effect

In the amended complaint, NMI seeks to hold Defendants liable under § 303(i)(2) in light of the aforementioned Florida judgments. Ashland's primary argument for dismissal is that, because it was not a petitioner at the time the Florida Bankruptcy Court dismissed the prior petition, NMI's amended complaint "does not support a reasonable inference that collateral estoppel applies" to support NMI's damages claims against Ashland.[22] By this same logic, Ashland further argues that collateral estoppel applies to require dismissal of claims against it.

Ashland attempts to downplay the distinction between its role in the Florida bankruptcy proceedings and its role in the Pennsylvania bankruptcy proceedings, calling the difference "hyper-technical."[23] The Florida Bankruptcy Court's rationale for declining to impose sanctions against Ashland was as follows:

> Ashland Funding was not a petitioning creditor. Ashland Funding was a party to a second amended involuntary petition that had no effect on these bankruptcy proceedings. The Court dismissed the First Amended Petition – to which Ashland Funding was <u>not</u> a party – and denied Rosenberg's motion to strike the second

---

[21] Doc. No. 6-1 at 8-20.

[22] *Id.* at 8.

[23] Doc. No. 11 at 2.

7

amended petition as moot. Accordingly, there exists no statutory basis under § 303(i) of the Bankruptcy Code to impose sanctions against Ashland Funding.[24]

Here, in contrast, there is a basis under § 303(i) to impose sanctions against Ashland. This is a crucial distinction, and one that undermines Ashland's preclusion argument. In the Florida proceedings, Ashland was never a petitioner by virtue of the petition being dismissed before Ashland was substituted for DVI Funding.[25] Here, Ashland *was* listed as a petitioning creditor in the petition that was ruled upon. Accordingly, Ashland's dismissal in the Florida Bankruptcy case does not preclude the instant suit, and the Court will not make any rulings at this stage as to whether or not the Florida rulings establish liability.

### B. Whether NMI Has Sufficiently Pleaded that Ashland Is a Petitioner

Next, Ashland argues that NMI has not sufficiently pleaded that Ashland is a petitioner for purposes of § 303(i)(2). According to Ashland, because Defendant Fox executed the second and third amended petitions on behalf of Ashland without authorization, Ashland cannot be considered a petitioner in this case. Although § 303(i) does not define "petitioner," Ashland urges the Court to read into the statute a requirement that a petitioner authorize the filing of an involuntary petition.[26] The Court declines to accept Ashland's definition of petitioner, and Ashland's status as a named petitioner on the second and third amended petitions is a sufficient basis for NMI's allegation that Ashland was a petitioner for the purposes of § 303(i)(2).[27]

---

[24] Memorandum Opinion Granting Ashland's Motion to Dismiss, *Rosenberg v. DVI Receivables, XIV, LLC*, Adv. No. 10-3812, Doc. No. 168 (Bankr. S.D. Fla. Mar. 23, 2012).

[25] *See Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x 251, 254 (3d Cir. 2016) ("[T]he Bankruptcy Court dismissed Ashland as a party to the adversary proceeding because Ashland was not listed as a petitioning creditor on the petition the Bankruptcy Court dismissed.").

[26] Doc. No. 6-1 at 11-12.

[27] The cases cited by Ashland in support of its interpretation of the term "petitioner" are unpersuasive. *See, e.g.*, *Scott v. Graphic Commc'ns Int'l Union, Local 97-B*, 92 F. App'x 896 (3d Cir. 2004) (non-bankruptcy case finding international union was not vicariously liable for alleged discrimination and harassment by local union); *In re Healthtrio, Inc.*, No. 09-34404 HRT, 2013 WL 6500478, at *13 (Bankr. D. Colo. Dec. 11, 2013) (denying 60(b) motion seeking reconsideration of court's order granting summary judgment because evidence of fraud by

## C. Whether NMI Has Adequately Alleged Bad Faith

Ashland next argues that NMI has not pleaded that Ashland acted in bad faith. Ashland contends that NMI improperly lumps Ashland together with the other Defendants, and notes that merely alleging bad faith by the other Defendants is not sufficient to state a claim against Ashland. However, NMI alleges bad faith by all Defendants. NMI contends, *inter alia*, that Defendants filed and prosecuted multiple involuntary bankruptcy petitions even though they were not creditors of NMI and "lacked standing to initiate or pursue" the involuntary bankruptcy cases, and that they did so "as a collection tactic to harass and cause embarrassment and economic ruin to the Putative Debtors, in an effort to extract more than what was owed in connection with a disputed debt."[28] Courts in the Third Circuit employ a fact-intensive "totality of the circumstances" approach to determining whether a petition was filed in bad faith:

> In conducting this fact-intensive review, courts may consider a number of factors, including, but not limited to, whether: the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing.[29]

This exhaustive analysis is ill-suited to resolution at this preliminary stage. The facts alleged in the amended complaint, taken as true, support an inference that Ashland and the other Defendants acted in concert and in bad faith in filing the underlying involuntary petition, which this and other courts found to lack merit.

---

petitioner's lawyer not clear and convincing); *In re Raymark Indus., Inc.,* 99 B.R. 298, 300 (Bankr. E.D. Pa. 1989) (explaining when counsel may sign and verify involuntary petitions on creditors' behalves).

[28] Doc. No. 2 ¶ 6.

[29] *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 336 (3d Cir. 2015).

### D. Whether NMI Has Sufficiently Pleaded Damages

Ashland's fourth argument for dismissal is that NMI has not adequately pleaded that the second and third amended petitions (as opposed to the original petition) proximately caused the harm alleged in the amended complaint, and that any asserted damages are too speculative to state a claim. According to Ashland, the amended complaint fails to set forth sufficient allegations of harm caused specifically by Ashland.

As noted, § 303(i)(2) states that a court "may grant judgment . . . against any petitioner that filed the petition in bad faith . . . for any damages proximately caused by such filing." For the purposes of § 303(i), courts have not made a distinction between original petitioners and later-added petitioners.[30] Ashland joined the second amended petition; that it was not an initial petitioner does not negate its involvement in the involuntary bankruptcy proceeding. NMI has sufficiently alleged that the petitioners, including Ashland, caused it harm.[31] Additionally, Ashland's argument that the damages alleged are speculative is premature and will be more appropriately addressed on a more complete record.[32]

---

[30] *E.g.*, *In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 630 (Bankr. N.D. Okla. 2005) ("[W]hether a petitioner is one of the original filers, or joins the petition at a later date, that petitioner undertakes significant responsibilities and assumes the risks set forth in § 303(i)."); *see also In re Promotion Dynamics, Inc.*, No. 92-16539S, 1992 WL 391276, at *1 (Bankr. E.D. Pa. Dec. 16, 1992) ("We believe that an award of attorneys' fees or costs incurred in defending an unsuccessful involuntary petition should ordinarily be granted against the petitioners from which damages are requested under § 303(i)(1) unless cause for *not* doing so is established.").

[31] *See* Doc. No. 2 ¶ 72 (alleging that the "commencement and continued prosecution" of the involuntary bankruptcy proceedings "(1) caused Plaintiffs to lose preferred provider status with major insurers; (2) caused physicians to lose confidence in the Plaintiffs' stability and to divert their patients to other providers; (3) caused lenders to cutoff the Plaintiffs' access to receivables, thereby creating a liquidity crisis; (4) caused vendors to put the companies on a COD basis, thereby further eroding cash and liquidity; and (5) destroyed Plaintiffs' reputations in the community, and torpedoed planned acquisitions and expansion").

[32] *See Clearpath Util. Sols., LLC v. US Crossings Unlimited, LLC*, No. 2:15CV1620, 2016 WL 4987092, at *3 (W.D. Pa. Sept. 19, 2016) ("Plaintiff's contention that defendant's asserted entitlement to lost profit damages is too speculative is misplaced at the motion to dismiss stage."); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 698 (E.D. Pa. 2014) ("[T]he Third Circuit has been reluctant to grant motions to dismiss based on speculative or complex damages."); *Prudential Ins. Co. of Am. v. Prusky*, 413 F. Supp. 2d 489, 495 (E.D. Pa. 2005) (stating that the "case lacks the necessary factual development to support a finding that the claim for monetary damages is impermissibly speculative" at the motion to dismiss stage).

### E. Whether § 303(i)(2) Provides for Joint and Several Liability

Finally, Ashland erroneously argues that it must be dismissed from the case because § 303(i) does not allow for joint and several liability. Whether joint and several liability is available is within the discretion of the Court, and it is to be determined based on the totality of the circumstances.[33] Thus, joint and several liability is possible under § 303(i), and it would be premature to hold that NMI may not pursue it.

### IV. CONCLUSION

For the reasons stated above, Ashland's Motion to Dismiss will be denied. An appropriate Order will be entered.

---

[33] *E.g., In re Maple-Whitworth*, 556 F.3d 742, 746 (9th Cir. 2009) (stating that a "bankruptcy court has discretion to hold all or some petitioners jointly or severally liable for costs and fees, to apportion liability according to petitioners' relative responsibility or culpability, or to deny an award against some or all petitioners, depending on the totality of the circumstances"); *In re Rosenberg*, No. 09-13196-BKC-AJC, 2012 WL 3990725, at *8 (Bankr. S.D. Fla. Sept. 11, 2012) ("Other courts have routinely imposed joint and several liability under Section 303(i).").